**Adolpho J. YBARRA, a/k/a Rudy J. Ybarra, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–84–330.**

Court of Criminal Appeals of Oklahoma.

Feb. 26, 1987.

D. Lynne Hunt, Asst. Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Mary F. Williams, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

Rudy Ybarra, appellant, was convicted of Murder in the First Degree in Comanche County District Court. A sentence of life imprisonment was assessed as recommended by the jury.

### I

The decedent, Darrell Marris, died as the result of being stabbed twenty-seven times; one wound piercing the heart and another severing the jugular vein. Appellant led police to Marris' residence in the late evening of June 11, 1983, after having called Detective Dawkins of the Lawton Police Department and informing him he thought he had killed someone. The decedent was found lying in a pool of blood on a pallet in his home. Defendant advised the officers that he had stabbed Marris during the early morning hours of June 11.

 Later at the police station, appellant was advised of his constitutional rights, after which he made a statement and signed it. He contends the trial court committed reversible error in admitting into evidence the incriminating statements ap-

pellant made to police officers prior to being read the *Miranda* warning.[1] He argues that he was in custody at the point the officers viewed the victim, and should have been informed of his rights at that time.

The police officers who spoke with appellant the evening of investigating the homicide each stated that once they saw the body, that they were careful not to ask him any questions. At the preliminary hearing appellant's friend who was present during this occasion said the police officers were careful not to interrogate.

During trial, however, she and appellant each testified that one of the officers asked appellant at the scene why he killed Marris. There was no testimony as to what explanation he offered.

A careful review of the record does not disclose any statements made by appellant between the time the body was shown to the officers and the time when appellant signed an acknowledgment of being advised of his constitutional rights.

*Miranda* warnings are not required unless there is interrogation while one is in custody. The evidence of such interrogation is disputed, and no resulting statements were offered at trial.

The trial judge conducted an in camera hearing to determine whether appellant's statements were voluntary.[2] He found they were and then instructed the jury they also were to determine voluntariness. We find no error being committed by the trial court in this assignment.

### II

Appellant contends that the trial court erred in not allowing the testimony from the preliminary hearing transcript to be introduced at trial. He asserts that their testimony was essential to his defense and that he had used due diligence in trying to secure their presence at trial. These same

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 174, 12 L.Ed.2d 908 (1964).

witnesses did not appear at the preliminary hearing until warrants were issued.

The steps appellant's counsel did take were to have subpoenas issued and delivered to the sheriff's office about seven days before trial. With several days left until the trial, counsel was informed that the two women had moved possibly to Laredo, Texas. He took no further steps to locate the witnesses or to compel their presence at trial.

A witness' prior statement may under certain circumstances be admitted if the witness is shown to be unavailable to testify and the proponent of his or her statement has been unable to procure the witness' presence by process or other reasonable means. 12 O.S.1981, § 2804. This Court has previously held that the proponent must show that a diligent effort has been made to locate the missing witness and that the witness is actually unavailable. *Smith v. State,* 546 P.2d 267 (Okl.Cr. 1976).

█ We are in agreement with the trial court that appellant did not meet his burden in demonstrating actual unavailability of the witnesses despite good faith and diligent efforts to secure their presence at trial. *Id.* Considering the witnesses' refusal to previously honor subpoenas, a more timely effort to serve process would have been reasonable. Appellant's counsel did request on the record at the preliminary hearing that these witnesses notify him if they had a change of address, however, this did not relieve him of his duties to serve process. Furthermore, appellant's counsel failed to utilize the statute that facilitates service out of state. 22 O.S. 1981, § 723. Nor did he at any time seek the assistance of the district court in securing their presence. Their testimony was for the most part corroborative of his concerning his location in the hours before the homicide. But the preliminary hearing transcript indicates some conflict in the testimony of the two witnesses on this point. We do not consider this evidence crucial to his defense theory that a third person killed Marris.

III

Appellant requested at trial that a number of instructions be given to the jury. He assigns as error the refusal of the trial judge to give instructions concerning self defense and manslaughter.

In appellant's statement to the police, he told them that he met Marris the morning of the homicide and went to his home to drink liquor. He claims that Marris put his hand on appellant's leg and said he wanted to give him a blow job. Appellant pretended to go along with him and then cold-cocked Marris. Appellant went into the kitchen for a beer for each and told Marris he did not want to hear such things. He said that the decedent said okay, but that the decedent rolled over quickly on the floor where he had been knocked. In his statement, he said he decided he had better grab a couple of knives and kill Marris because he thought Marris was going to kill him. The medical examiner testified that there were no defensive wounds on the decedent.

At trial, appellant testified that he did not kill Marris. He said he traveled to Marris' home in Marris' vehicle as requested by decedent. There he saw a man named C.J. stabbing Marris. Appellant got frightened and fled in Marris' automobile. He said the statement which he gave to the police was not true, but that he gave it so that C.J. would not kill him for being a snitch.

Appellant was not entitled to instructions of self defense or manslaughter because they were not consistent with his theory of defense nor was there sufficient evidence of either to warrant the judge in submitting them to the jury. We held in *Sanders v. State,* 556 P.2d 611 (Okl.Cr.1976), that when a defendant testifies and makes admissions that exclude all defenses but one, he will be deemed to have elected that defense. Appellant's theory of defense was that C.J. killed Marris. A theory of self defense or manslaughter would be entirely inconsistent.

■ Futhermore, the statement which appellant gave to the police did not support a theory of self defense nor of manslaughter. Appellant was not entitled to use deadly force to repel what was at best a simple assault; his statement did not establish the necessity of using such force. 21 O.S.1981, § 733; *Mammano v. State*, 333 P.2d 602 (Okl.Cr.1958). Other than putting his hand on appellant's leg, no acts of aggression are assigned to decedent. It is improper for the trial judge to give instructions which are not warranted by the evidence. *Lumpkin v. State*, 683 P.2d 985 (Okl.Cr.1984).

■ Appellant contends that his requested instructions of manslaughter should have been given as lesser included offenses because evidence indicated his ability to form malice aforethought was impaired, he acted in the heat of passion, and he was resisting decedent's attempt to involve him in a crime. The only evidence of impaired mental ability at the time of the crime was concerning his ingestion of drugs and alcohol. The jury was thoroughly instructed on intoxication and whether it may have prevented him from forming malice aforethought. The instructions requestd by appellant concerning intoxication were substantially those which the court gave to the jury.

Heat of passion was not suggested by the evidence. After decedent had allegedly put his hand on appellant and appellant had coldcocked him, appellant went to the kitchen to get them each a beer, and then subsequently decided he had better kill Marris. His own statement negated heat of passion or his need to kill Marris to prevent him from committing a crime. In *Mammano*, supra, we held that such a simple assault is not a crime which justifies the use of deadly force. This assignment is without merit.

### IV

Appellant next urges that error occurred when the trial court admitted into evidence several snapshots of Marris' nude body taken at the morgue. He claims they were irrelevant, unduly gruesome and prejudicial because the body was nude and showed his genitals.

■ From our review of the record, we find the photographs of the deceased relevant in that they helped the jury to understand the medical examiner's testimony concerning the type of injuries the victim suffered and the cause of death. The State argues that the number of wounds was indicative of malice aforethought.

■ Photographs do not have to be taken at the scene of the crime in order to be relevant as argued by appellant. The genitals would probably not have been observable except that some of the stab wounds were located on decedent's leg. We do not find the black and white photographs unnecessarily inflammatory to the emotions or prejudicial to appellant. 12 O.S.1981, § 2804; *Oxendine v. State*, 335 P.2d 940 (Okl.Cr.1958).

■ Appellant claims too that the body in the pictures was not properly identified as being that of Darrell Marris. The detective who took the pictures identified them as the victim and the medical examiner stated that they were photographs of the man named Darrell Andrew Marris whom he autopsied. We find no abuse of the trial court's discretion in admitting the pictures.

### V

■ Appellant next contends the trial court erred in not sustaining his demurrer to the evidence made when the State rested. This assignment is not properly preserved because appellant proceeded to put on his evidence after the demurrer was overruled. This constitutes waiver of error. *Phillips v. State*, 641 P.2d 556 (Okl. Cr.1982). We have reviewed for fundamental error and find none.

### VI

Appellant complains of a number of comments of the prosecutor alleged to be improper and which warrant reversal of his conviction. Some, but not all, drew objections from the defense at trial. In not one

instance did defense counsel request the court to admonish the jury concerning the comment.

Unless comments by the prosecutor are unusually egregious, admonishment of the jury will suffice to cure error. Thus, this Court requires both an objection and request for admonishment of the jury to preserve error of this nature. *Hickman v. State*, 626 P.2d 873 (Okl.Cr.1981). None of the comments would require a mistrial, nor reversal on appeal.

Generally, when a defendant is cross-examined concerning prior felony convictions for the purpose of undermining credibility, the details surrounding the offense are not a proper subject matter. The prosecutor asked appellant whether his conviction was rendered by a jury, to which appellant answered affirmatively. Appellant contends this was error. We note, however, that this very information was contained within the judgment and sentence of his conviction which was admitted into evidence at the request of the defense. There was no error.

Finding no error warranting reversal or modification, judgment and sentence is AFFIRMED.

BRETT, P.J., concurs.

PARKS, J., concurs in results.