Jonathan Wayne NEAL, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. M–92–47.

Court of Criminal Appeals of Oklahoma.

Sept. 8, 1992.

## ORDER REVERSING AND REMANDING FOR NEW TRIAL

Jonathan Wayne Neal, appellant, was tried by jury and convicted of Driving Under the Influence of Alcohol (47 O.S.1991, § 11–902) in Tulsa County District Court, Case No. CF–91–3086, before the Honorable William J. Mussman, District Judge. Punishment was set at thirty (30) days incarceration in the Tulsa County Jail and a five hundred dollar ($500.00) fine.

The appeal was automatically assigned to the Accelerated Docket of this Court pursuant to Rule 11.2(a)(1) of the *Rules of the Oklahoma Court of Criminal Appeals*, 22 O.S.1991, Ch. 18, App. The issues in the appeal were presented to this Court in oral argument on August 13, 1992. At the conclusion of oral argument, the parties were advised of the decision of this Court.

We find merit in appellant's first proposition of error wherein he contends that his ability to impeach a state's witness was impermissibly infringed by the trial court. At preliminary hearing [1] the arresting officer, Officer Downing, testified that he never saw appellant driving the van. (P.H. Tr. 12). At trial Officer Downing

---

1. Appellant was originally charged with Assault and Battery Upon a Police Officer, a felony.

Thus, he was entitled to and received a preliminary hearing.

testified that he was able to get a good look at the person driving the van and identified appellant as the driver. (Tr. 32). During the cross-examination of Officer Downing, at trial, the following occurred:

Q: Do you recall me asking you whether you could see who was driving the van at that point, and you saying you could not see who was driving?

MR. HATHCOAT: Objection, your Honor.

THE COURT: Sustained. There's a proper way to do that.

Q: (By Mr. Clark) Officer, you testified about these matters earlier; correct?

Q: Are your answers today any differently (sic) than they were when you previously testified?

A: Not as best I can recollect, sir.

Q: Do you recall testifying that, as you were following the van, you couldn't see who was driving it?

MR. HATHCOAT: Objection, Your Honor.

THE COURT: Sustained. Counsel, both approach the bench.

THE COURT: I'm not going to allow him to testify unless you have that testimony and can read him the exact verbatim answers. That's the proper way to impeach earlier testimony. We're not going to play do you recall games.

MR. CLARK: I will call the court reporter—

THE COURT: She's not going to look back through it.

MR. CLARK: Note my objection.

THE COURT: Exception allowed.

(Tr. 49–50). On this record, we agree with appellant's contention that the trial court prematurely terminated his attempt at impeachment.

This Court was faced with a similar issue in *State v. McBlair*, 670 P.2d 606 (Okl.Cr. 1983). In *McBlair*, defense counsel impeached the state's witness concerning prior inconsistent statements without a transcript of the prior statements. Before this Court on a reserved question of law, the case addressed the issue of when is it error for the court to allow defense counsel to cross-examine a state's witness regarding

prior inconsistent statements without a certified transcript of the prior testimony. We held that if the witness denies the making of the inconsistent statement, or fails to admit it, the cross-examiner must prove the making of the statement at the next stage of giving evidence. This may be accomplished by introducing into evidence the applicable portions of the transcript but we pointed out that this is only one available method of establishing prior inconsistent statements.

> Because there are means of proving up prior inconsistent statements other than introducing the transcript into evidence, it would be highly inconsistent to require counsel to produce the transcript during the foundation-laying stage. Accordingly, we hold that so long as the substance of the statement is accurate, paraphrasing of prior testimony is permissible.

*Id.* at 608.

*McBlair* implies that there are two stages involved in impeaching a witness with a prior inconsistent statement. Regarding the first stage, the foundation laying stage, we concluded that "the better rule is that the trial court generally should not require questions and answers to be read from the transcript of the prior hearing when counsel is laying the foundation for introducing proof of the prior inconsistent statement." *Id.* at 608.

Although the decision in *McBlair* was based on circumstances occurring in the foundation laying stage, we commented on the second stage, the proving stage, with the following:

> If the witness admits making the prior inconsistent statement, it is not necessary to introduce the portion of the transcript relating to the inconsistent statement. *See Kelsey v. State*, 569 P.2d 1028 (Okl.Cr.1977). If the witness denies the making of the statement, however, or fails to admit it, the cross-examiner must prove the making of the statement at the next stage of giving evidence. [*United States v.*] *Hibler*, 463 F.2d 455 [ (9th Cir.1972) ]. This may be accomplished by introducing into evidence the applicable portion of the transcript or by putting on

the stand the court reporter or someone else who heard and recalls the statement and eliciting testimony that the witness made the statement.

*McBlair*, 670 P.2d at 608. We find that the error, in the instant case, occurred in the foundation laying stage; after the witness stated that he could not recall giving a prior inconsistent statement appellant was entitled, even without the transcript of the earlier testimony, to confront the witness with the substance of the inconsistent statement.

■ In addition to reasserting our holding in *McBlair*, we find it advantageous to address the methods of proving that a prior inconsistent statement was in fact made. This Court has previously recognized alternative methods of examining prior testimony. *Hall v. State*, 570 P.2d 955, 959 (Okl. Cr.1977). "This recognition would seem to include the use of such alternative methods and impeachment of the State's witnesses." *Id.* However, *Hall* required that counsel make a diligent effort to obtain the transcripts of previous testimony before alternative methods of impeachment could be used. *Id.* *Hall* cites *Kirk v. State*, 555 P.2d 85 (Okl.Cr.1976), as authority for the holding that counsel must first show a diligent attempt to obtain a transcript of prior testimony before alternate methods of impeachment are permitted.

In *Kirk* the issue presented was whether the trial court erred in refusing to grant the defendant's motion for continuance. The motion for continuance, which was filed on the day of trial, was based on defendant's professed inability to obtain a transcript of preliminary hearing. This Court noted that a previous motion for continuance had been granted to allow defendant time to secure the transcript and "[t]hat the record is devoid of any evidence that pursuant to the first continuance of the jury trial that defendant made a diligent effort to obtain the transcript or to notify the court he was unable to do so." *Id.* at 87. The Court concluded that defendant had ample time to secure a transcript and failed to do so. Accordingly, we held that the trial court did not abuse its discre-

tion in denying defendant's motion for continuance.

Under the circumstances found in *Kirk*, the requirement that counsel make a diligent effort to obtain transcripts is sound. *Kirk* does not require an effort to obtain transcripts before alternate methods of impeachment are available. We find that *Hall* stretches the *Kirk* rational beyond its intended parameters. We hereby expressly overrule *Hall* to the extent that it prohibits the use of alternate methods of impeachment in the absence of showing diligent attempts to obtain the prior testimony. We find that the better rule is to grant counsel leniency in the choice of methods used to prove the existence of a prior inconsistent statement. This choice includes, but is not limited to, the use of prior testimony and counsel's ability to use legitimate alternative methods shall not be contingent upon a showing the unavailability of transcripts. To hold otherwise would require counsel, in order to protect his right to impeach via a prior inconsistent statement, to obtain transcripts for all witnesses and prepare for the possibility, however remote or unforseen, that the witness will give inconsistent testimony at trial.

For the foregoing reasons, IT IS THE ORDER OF THIS COURT that this cause should be, and hereby is, REVERSED and REMANDED for NEW TRIAL.

IT IS SO ORDERED.

/s/ James F. Lane
JAMES F. LANE, Presiding Judge
/s/ Gary L. Lumpkin
GARY L. LUMPKIN, Vice Presiding Judge
Concurs In Results
/s/ Tom Brett
TOM BRETT, Judge
/s/ Charles A. Johnson
CHARLES A. JOHNSON, Judge

LUMPKIN, Vice–Presiding Judge, concurring in results:

Initially, I want to compliment Appellant's attorney on appeal, Barry L. Derryberry, Assistant Public Defender, Tulsa County. His reasoned argument compelled further research by this judge which resulted in a withdrawal of my original vote and the further analysis contained in this

separate opinion. Effective appellate advocacy is not only appreciated, but required if the Court is to be provided the insight needed to address issues of this type.

The Court in this case fails to recognize the issue raised is answered by the provisions of the Oklahoma Evidence Code, not our prior caselaw. The admission of prior inconsistent statements for impeachment purposes is governed by 12 O.S.1991, § 2613. This statute provides:

A. In examining a witness concerning a prior statement made by him whether written or not, the statement need not be shown nor its contents disclosed to him at that time but on request the same shall be shown or disclosed to opposing counsel, just prior to the cross-examination of the witness.

B. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon. This provision does not apply to admissions of a party opponent as defined in subparagraph B of paragraph 4 of Section 801 of this Code. *Id.*

This enactment changed existing law: no longer must counsel show the witness a copy of the prior statement before questioning the witness upon the statement. *See* Evidence Subcommittee's Note following 12 O.S.1991, § 2613. While Section 2613 abandoned the requirement to show the witness a copy of the prior statement, it retained a requirement to show or disclose the contents of the prior statement to opposing counsel upon request. In addition, a party is now allowed to impeach the credibility of any witness, including a witness called by that party. 12 O.S.1991, § 2607. However, as with all evidence, impeachment evidence is subject to the balancing test of 12 O.S.1991, § 2403 (trial judge must weigh probative value against prejudicial value). *Smith v. State*, 766 P.2d 1007, 1008–09 (Okl.Cr.1988). The trial judge's ruling admitting, or denying the admission of, impeachment evidence will be reviewed upon an abuse of discretion basis.

*Reeves v. State*, 818 P.2d 495, 501 (Okl.Cr. 1991).

The closest statement toward mandating a "proper" method for impeaching witnesses is found in *Rogers v. State*, 721 P.2d 805 (Okl.Cr.1986). This Court, in addressing the use of extrinsic evidence to impeach a prior inconsistent statement, stated:

This rule requires counsel, normally the cross-examiner, to first ask the witness about the prior inconsistency, and then [give] the witness the opportunity to deny, affirm, or explain the earlier statement. Also imposed upon counsel is the duty of identifying the subject matter of the statement, the time and place of its utterance, and the person to whom it was made.

*Id.* at 808.

The "rules", prior to passage of The Evidence Code, regarding the introduction of extrinsic evidence are different depending on whether the matter sought to be impeached is collateral (immaterial) or noncollateral (material). If the matter which is subject to impeachment was collateral (immaterial or irrelevant) and the witness denies making the statement, the questioner must take the answer the witness gives. *Montgomery v. State*, 425 P.2d 470, 472 (Okla.1967). See also, *Kelsey v. State*, 569 P.2d 1028, 1031 (Okl.Cr.1977) (if when asked about the prior inconsistent statement the witness admits making the statement, the substance of the prior statement cannot be introduced into evidence). The examiner may not "resort to the testimony of other witnesses to prove, or disprove, the collateral matters." *Montgomery*, 425 P.2d at 472. However, if the matter is noncollateral, extrinsic evidence could be introduced to prove the prior statement if the witness denied making the earlier statement. (If the witness admits making the prior inconsistent statement, extrinsic evidence of the prior statement should not be admitted into evidence as the admission by the witness has served the purpose of impeachment. *Kelsey*, 569 P.2d at 1031.) At this juncture, the impact of Section 2613 on this line of cases has not been determined.

If a case proceeds to the stage allowing extrinsic evidence, the form of evidence can vary: victim's statement in police reports (*Hawkins v. State*, 782 P.2d 139, 142 (Okl. Cr.1989); oral, unsworn statements (*United States v. Sisto*, 534 F.2d 616, 622 (5th Cir.1976); tape recordings (*United States v. Jones*, 578 F.2d 1332, 1335 (10th Cir. 1978); videotapes (*United States v. Stahl*, 616 F.2d 30 (2nd Cir.1980); transcript of court reporter; or oral report of observer of prior testimony (*United States v. Hibler*, 463 F.2d 455, 461 (9th Cir.1972) (citations omitted).

In this case trial counsel was having some difficulty formulating questions for the witness and objections were sustained as to the form of the question. Upon review it is apparent the trial judge had forgotten the impact of Section 2613 and the Evidence Subcommittee Notes to it. However, trial counsel entered into the following question and answer sequence with the witness:

Q. (By Mr. Clark) Officer [Downing], you testified about these matters earlier; correct?

Q. Are your answers today any differently (sic) than they were when you previously testified?

A. Not as best I can recollect, sir. (Tr. 49–50)

At this juncture the witness should have been given the "opportunity to explain or deny" the prior statement. The attorney for the State merely objected and did not "request the [prior statement] be shown or disclosed" prior to the cross-examination. Such a request in this case would have curtailed the ability of defense counsel to comply with Section 2613 because he had not secured even a partial transcript of the prior testimony. Even during the course of trial an innovative trial attorney can secure the requisite documentation needed to comply with the statutory requirements. The record in this case reveals the trial attorney did nothing to obtain the needed transcript. This important fact is not addressed by the Court in its decision. While the Court generically brushes aside the need to show diligence in obtaining a tran-script of the prior testimony, at the same time it clouds the issue of scope of cross-examination versus the use of extrinsic evidence to prove the prior statement. The practical difficulty of allowing trial counsel to proceed with questions without a copy of the prior statement concerns the ability of the trial judge to properly rule on objections. What standard will the trial judge be able to utilize to determine if the question is proper and if objections to the question should be sustained or overruled? In this case trial counsel was relying on memory without the ability to meet the proof required for introducing extrinsic evidence. This Court should formulate rules which encourages trial counsel to be prepared for trial. This decision does not require or encourage professional trial preparation.